IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-20953-CIV-LENARD

CITY OF ST. PETERSBURG, a Florida
municipality; TWIN OIL COMPANY, a Florida
corporation; JEFF MONTGOMERY
ASSOCIATES, a sole proprietor in the State of
Florida; and FIVE GROUP CORP., a Florida
corporation, on behalf of themselves and all other
Florida residents similarly situated,

         Plaintiffs,

-vs-

TOTAL CONTAINMENT, INC., a Pennsylvania
corporation; TC FUEL COMPONENTS, LLC., a
Pennsylvania corporation; DAYCO PRODUCTS,
INC.; a Delaware corporation (and subsidiary of
PARKER HANNIFIN CORP.); DAYCO
PRODUCTS, LLC, a Delaware corporation
CLEVELAND TUBING, INC., a Tennessee
corporation; MARK IV INDUSTRIES, INC., a US
based company; MARK IV INDUSTRIES, LTD., a
Delaware corporation, MIV HOLDINGS, S.A., a
Luxemborg company (and parent of Mark IV
Industries, Inc.); CANAM GROUP, INC., a
Canadian corporation; CANAM MANAC GROUP,
INC., a former Canadian corporation; CANAM
STEEL CORP., a subsidiary of Canam Manac
Group, Inc.; FINLOC, INC., a Canadian
corporation; Finloc US Inc., a Delaware
corporation; POLYFLOW, INC., a Pennsylvania
Corporation; and UNNAMED DEFENDANTS 1-
100, inclusive,
         Defendants.



EXHIBIT "A"

# CONSENT AGREEMENT ESTABLISHING A DESTRUCTIVE TESTING PROTOCOL

The Parties hereto having entered into a consent agreement relating to a Destructive Testing Protocol governing the investigation and testing of numerous versions of Total Containment Inc. (hereinafter referred to as "TCI") flexible hose and piping system in Florida (or that forms the basis of plaintiff's complaint). In consideration of the mutual provisions contained in the agreement and subject to all of the terms, provisions and conditions set forth herein, the Parties agree as follows:

## I. Statement of General Intent

**A.** The Parties represent that the general intent of this consent agreement is to establish a protocol for minimum destructive testing of the TCI flexible hose and piping systems at issue in this litigation.

**B.** This consent agreement is not intended to and does not create, alter, and/or modify any standard for the admissibility of evidence, nor does this proposed consent agreement or any of the procedures contained herein (including observation of any destructive testing) waive or otherwise alter any privileges (including privileges and other rights under the Federal Rules of Civil Procedure and Federal Rules of Evidence that would otherwise apply to persons or things involved in (or associated with) the analysis of any TCI flexible hose and piping system equipment samples.

**C.** Notwithstanding anything contained herein, no provision(s) of this agreement shall be construed to modify any existing obligation imposed upon any party by the United States District Court, Southern District of Florida and/or applicable law.

## II. Definitions

A. **Destructive Inspection and/or Testing** as used herein shall mean any laboratory or field procedure performed resulting in the alteration of the physical and/or chemical structure and/or composition of the test material(s) from the TCI flexible hose and piping system equipment samples to such an extent that another party would be deprived of information and/or data not available to it through other means. **Destructive Inspection and/or Testing** shall not include **Harvesting**.

B. **Harvesting** as used herein shall mean recommended field procedure performed to select and retain representative samples of TCI flexible hose and pipe system equipment for laboratory examination and testing.

C. **Fitting** means any component part that is designed to connect, branch, or terminate piping sections and contain liquids and is attached to, but not fully integrated into the flexible piping, sump boots are not considered fittings.

D. **Required Documentation** as used herein shall mean:

   **1.** Digital images of sufficient quality and resolution as previously described shall be captured to document the condition of the flexible piping or fitting prior to any alteration of the physical or chemical structure and/or composition of such. If there are multiple stages involved in Destructive Inspection or Testing, then each stage shall be similarly documented.

   **2.** Part numbers where they are visible, including manufacturer designated part numbers, lot numbers, and UL listing numbers need digital images of sufficient quality and resolution as previously described, in which the part

    numbers are readable are preferred to document the part number of the flexible piping. If digital images are not available or are not of sufficient quality to provide readable part numbers, then a written record of the part number shall be allowed that represents the examiner's best interpretation of the number.

E. **Testing Sample** means a portion of the TCI flexible hose and piping system equipment used for analytical or other testing that will physically consume the sample or permanently alter the mechanical properties of the sample.

F. **Piping** is a long cylindrical walled structure designed for the intended use of underground burial and conveying petroleum fuels and vapor at motor fuel dispensing facilities.

G. **Piping System** means a combination of flexible pipe (primary or coaxial), secondary chase pipe and their fittings and equipment accessories necessary to contain petroleum fuels and vapors transferred between the storage tank and fuel dispensers and vapor or air transfers between the dispenser and tank to atmosphere.

H. **Visible Failure Area**:

  **1.** As to TCI flexible hose and piping system equipment, a Visible Failure Area shall mean the area of TCI flexible hose and piping system equipment where there is a visible breach to the unaided naked eye in either the exterior or interior layer, areas where there are apparent physical changes to the color, structure, integrity or other physical properties of the TCI flexible hose and piping system equipment as used in this agreement shall

be described and include the following areas:

   a. **Lengthwise** – 12 inches, plus or minus one-half inch, measured on either side of the center of the visible breach in the exterior layer (2 feet total) – except that, if the center of the visible breach is within 12 inches of the nearest edge of the flexible pipe coupling, then the Failure Area shall extend to the end of the coupling and 6 inches, plus or minus one-half inch, to the other side of the visible breach; and

   b. **Radially** – Half of the circumference of the TCI primary and/or secondary piping, with the center of the visible breach located at the center of the half-circumference that defines the Failure Area.

## III. Field Inspection

### A.   Field Testing

   1. Before cutting or harvesting samples during removal activities, the TCI primary flexible pipe shall be subjected to a pressure test at pressures not exceeding 20 p.s.i. The parties shall document the existence of any air leaks and label the location of the air leak(s) accordingly. The parties shall likewise document the absence of any air leaks in any field testing notes.

   2. Any identifying numbers or symbols on the hose shall be documented and the hose shall be labeled at any dissection point so as to preserve and allow future identification of the location from which harvested samples were taken.

### B.   **Harvesting** includes the following procedures:

   1. **TCI Flexible Pipe System Removal**- If TCI primary or coaxial flexible

pipe is buried in direct contact with the ground, the backfill will be removed from the area surrounding the flexible pipe with a vacuum truck and the flexible pipe will be available for examination in the trench prior to removal from the trench. If the TCI primary or coaxial flexible pipe is installed in a secondary chase pipe, the TCI Primary flexible pipe may be pulled from the secondary chase pipe with non-powered equipment after the flexible pipe is marked to show its position in relation to the sump. The backfill in the trench surrounding the secondary chase pipe will be removed with a vacuum truck and the secondary chase pipe will be available for examination in the trench prior to removal from the trench.

**2.** **Temporary TCI Flexible Pipe System Equipment Preservation**- After field testing, the full length of the removed TCI Primary Flexible Pipe will be wrapped in plastic and temporarily stored in an air conditioned storage facility pending a reasonable designated inspection date. At the time of the reasonable designated inspection date, the removed TCI Primary Flexible Pipe shall be inspected for the last time prior to harvesting representative pipe sections as described in Section III B 3, below. Other equipment sections of the TCI flexible pipe system may be cut and removed in the field and preserved for future examination.

**3.** **Harvesting the TCI Primary Flexible Pipe**- TCI primary flexible pipe is not to be cut within 18 inches of any end connectors or fittings; within 12 inches of a visible breach in the outer surface of the TCI primary flexible pipe; or, within 12 inches of a leak identified during field testing. When

cutting the TCI primary flexible pipe, the area of the cut will be marked and documented to allow future investigators to identify where the cut section of the flexible pipe was in relation to the entire removed flexible pipe. The parties agree that at least one 18-inch piece is cut and retained from each 10 foot length of TCI primary or coaxial flexible pipe. At the time of harvesting the TCI primary flexible pipe, opposing counsel or their designated agent will be allowed to harvest any remaining sections of the removed TCI primary flexible pipe for their inspection and testing in accordance with the conditions of this agreement. Any remaining sections of the removed TCI primary flexible pipe can be discarded.

## IV. TESTING

### A. Inspection Notification of Flexible Piping and Piping System Equipment for Testing

**1.** Each Party shall provide at least two (2) weeks prior written notice to all other Parties prior to conducting Destructive Investigation or Testing. Such notice shall include the known information regarding the designated TCI flexible hose and piping system equipment samples to be tested, date(s) and start time of the testing, the geographic location where the testing will be completed and the expected investigation and testing procedures planned (However, the Parties recognize that appropriate testing may be determined during the investigation based on the results of all or part of the expected tests). Any party wishing to inspect the TCI flexible piping system equipment samples designated for any Destructive

Investigation and Testing may conduct a non-destructive inspection and identification of any TCI flexible hose and piping system equipment samples identified for Destructive Investigation or Testing prior to the designated start of testing.

B.  **Designated Material and Testing Deadlines**

   **1.** When a Party designates any piece of TCI flexible hose and piping system equipment for Destructive Investigation and/or Testing, it shall comply with the following minimum deadlines and requirements.

   a) Any Party wishing to conduct Destructive Investigation and/or Testing must provide to the other parties a commitment to test notification within 14 days of any designated start date. The "commitment to test" must include a designation of the TCI flexible hose and piping system equipment samples to be tested. A listing of all testing methodologies that the party intends to use. The name and address of each and every laboratory to which TCI flexible hose and piping system equipment samples have been sent.

   b) Except as provided in d. below, any Party that has made a commitment to conduct Destructive Investigation and/or Testing shall complete the Testing on all designated TCI flexible hose and piping system equipment samples and distribute the Required Documentation (See Section C 1 below) for each investigation to all Parties within 60 days of completing the Destructive Investigation and/or Testing.

    c) Any Party that conducts any additional testing or other follow-up analysis shall distribute the Required Documentation within 60 days of completing the Destructive Investigation and/or Testing.

    d) Notice of Intent to Perform Prolonged or Extended Exposure Testing. Where a Party intends to conduct a test that requires a prolonged or an extended exposure time period such that the test will not be completed within 60 days of the start of the Destructive Investigation and/or Testing, it shall provide notice at the time of committing to test the sample, to all parties via electronic mail, facsimile, and/or hand delivered correspondence of the nature of the testing and a listing of all testing methodologies that the Party intends to conduct and the time schedule for completing the tests.

**C.   Destructive Investigation or Testing**

    **1. Mandatory Minimal Testing** shall be required with supporting required documentation to be completed by the testing consultant as specified below.

        a) Required Documentation noting the Visual condition of each layer, including:

          i.    Color

          ii.    Staining

          iii.    Discoloration

          iv.    Discontinuities in the plastic, such as burnt fragments

          v.    Disbonding when cut lengthwise

  vi. Fluids retained between layers

  vii. Condition of layers.

b) Thickness of the inner liner layer measured 4 times around the circumference at each 12 inch interval.

c) FTIR identification of the plastic compounds in each layer, including adhesive layers.

d) Optical Microscopy at magnification levels up to 40X shall be used to document the condition in the breach, crack or split and other area of interest to the testing examiner. Digital photographs of the magnified images shall document the inside and the outside of the breach, crack or split, and any layers exposed, if layers are removed. No cuts shall be made through the breach, crack or split and other area of interest to the examiner until this magnified photo documentation is complete.

e) Scanning Electron Microscopy shall also be used to document the breach, crack or split or other area of interest to the examiner at level between 10X and 3000X.

2. The Parties agree to act in good faith to coordinate the schedule of any Destructive Inspection and Testing of TCI flexible hose and piping system equipment samples to allow for consulting experts for each Party to observe the Destructive Investigation or Testing. Observing persons shall not comment on the testing procedures, ask questions of the scientists performing the tests, or otherwise interfere with the investigation and testing process. Where all Parties' schedule cannot be reasonably

accommodated, the testing Party shall determine the best available date for Destructive Investigation and/or Testing when considering the interests of all Parties as well as the discovery schedule in this case. Where one Party has previously scheduled Destructive Investigation and/or Testing, another Party shall not schedule testing for the same time period, if any other Party states in writing that it wishes to be present for both sets of destructive testing.

D. **Disclosure Obligations**

1. Each Party performing Destructive Investigation and/or Testing agrees to disclose Required Documentation.

2. The Parties agree to exchange a description of the methodology and specific parameters measured as part of their testing. Where a published analytical protocol is used, reference to the appropriate protocol shall be sufficient, but any deviations from the published protocol must be specifically identified.

3. No Party shall alter, or otherwise modify any original digital or other image produced to other parties unless specifically required by and in accordance with this agreement.

4. No digital image shall be produced in an electronic form and/or file that is condensed, compressed, and/or altered from its original formatting. Digital stitching of multiple images to form a panorama or a mosaic is allowed if the original, individual pictures are provided, as well.

5. The test results and laboratory notes shall be made available to all parties within 60 days of the test results.

E. **Test Sample Retention**

1. All retained samples and remnants of TCI flexible hose and piping system equipment samples after laboratory inspection and testing shall be retained. The retained samples and remnants shall be clearly labeled and identified by notes and photographs such that the location and origin of the sample or remnant can be identified. Samples and remnants shall be stored in a temperature controlled environment in a container or storage location that is not subject to exposure to UV light.

F. **Other Party Requests to Observe Sample Remains/Remnants or to Conduct additional Destructive Investigation and/or Testing**

1. Any Party will be allowed the opportunity to review the sample remains and remnants from testing conducted by another Party upon appropriate fourteen day notice. Shipping of the samples shall be at the requesting Party's expense. Requests shall be addressed in the order received. The Party conducting the inspection of the sample remains and remnants shall have seven days from receipt to complete its inspection. Upon completion of inspection, the Party at its own expense shall return all sample remains and remnants.

G. **Resolution of Disputes**

1. The parties agree to confer and work in good faith to resolve any disputes over the selection of test samples and/or the sequence of tests. Should

the parties have any dispute that they cannot resolve in good faith, any party may request the suspension of any destructive test and seek Court intervention. Should a party proposing any destructive testing be informed of an opposing party's intention to seek Court intervention, the testing party agrees to refrain from performing the destructive testing until a ruling is obtained, so long as the noticing party files a motion with the Court on or before the next business day.

Agreed upon by the parties this _____ day of August, 2007.

| | |
|---|---|
| PODHURST ORSECK, P.A.<br>Robert C. Josefsberg / rjosefsberg@podhurst.com<br>Katherine W. Ezell / kezell@podhurst.com<br>Victor M. Diaz, Jr. / vdiaz@podhurst.com<br>City National Bank Building<br>25 West Flagler Street, Suite 800<br>Miami, Florida 33130<br>Telephone: (305) 358-2800<br>Facsimile: (305) 358-2382<br>*Counsel For Plaintiffs* | WICKER, SMITH, O'HARA, McCOY,<br>  GRAHAM & FORD, PA<br>Dennis M. O'Hara / dohara@wickersmith.com<br>Jordan S. Cohen / jcohen@wickersmith.com<br>515 East Las Olas Boulevard<br>SunTrust Center, Suite 1400<br>Fort Lauderdale, FL 33301<br>Telephone: (954) 847-4800<br>Facsimile: (954) 760-9353<br>*Counsel For Total Containment, Inc* |
| ADAMS & REESE, LLP<br>Richard B. Eason, II / richard.eason@arlaw.com<br>E. Gregg Barrios / gregg.barrios@arlaw.com<br>Ralph Wall / ralph.wall@arlaw.com<br>Mark J. Spansel / mark.spansel@arlaw.com<br>701 Poydras Street, 4500 One Shell Square<br>New Orleans, LA 70139<br>Telephone: (504) 581-3234<br>Facsimile: (504) 566-0210<br>*Counsel For Dayco Products, LLC, Mark IV Industries, Inc., Mark IV Industries, Ltd. & MIV Holdings, SA* | MILLER & MARTIN, PLLC<br>T. Harold Pinkley / hpinkley@millermartin.com<br>150 Fourth Avenue, North<br>1200 One Nashville Place<br>Nashville, TN 37219<br>Telephone: (615) 244-9270<br>Facsimile: (615) 256-8197<br>*Counsel For Cleveland Tubing, Inc.* |

DLA PIPER RUDNICK GRAY CARY US LLP
Fredrick McClure/fredrick.mcclure@dlapiper.com
E. Colin Thompson / colin.thompson@dlapiper.com
Matthew Meyer / matthew.meyer@dlapiper.com
101 East Kennedy Blvd., Suite 2000
Tampa, FL 33602
Telephone: (813) 229-2111
Facsimile: (813) 229-1447
*Counsel For Canam Group, Inc.,
Canam Manac Group, Inc. & Canam Steel Corp*

SHUTTS & BOWEN, LLP
Joseph Goldstein / jgoldstein@shutts-law.com
Edward O'Sheehan / eosheehan@shutts-law.com
200 East Broward Blvd.,
Fidelity Federal Center, Suite 2100
Fort Lauderdale, FL 33301
Telephone: (954) 524-5505
Facsimile: (954) 888-3066
*Counsel For Polyflow, Inc, TC Fuel Components,
Inc. & Finloc US, Inc.*

JACKSON & CAMPBELL
Paul D. Smolinsky / psmolinsky@jackscomp.com
Richard W. Bryan / rbryan@jackscamp.com
1120 Twentieth Street, N.W.
Washington, DC 20036-3437
Telephone: (202) 457-1600
Facsimile: (202) 457-1678
*Counsel For Commerce & Industry Insurance Co.*