UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-20953-CIV-LENARD/TORRES

**CITY OF ST. PETERSBURG**, a Florida municipality; **TWIN OIL COMPANY**, a Florida corporation; and **JEFF MONTGOMERY ASSOCIATES**, a sole proprietor in the State of Florida, on behalf of themselves and all other Florida residents similarly situated,

          Plaintiffs,

vs.

**POLYFLOW, INC.,** *et al.*,

          Defendants.
_____/

<u>ORDER ADOPTING REPORT AND RECOMMENDATION
(D.E. 641) AND GRANTING IN PART AND DENYING IN PART DEFENDANT
POLYFLOW, INC.'S MOTION FOR SUMMARY JUDGMENT (D.E. 437)</u>

**THIS CAUSE** is before the Court on the Report and Recommendation issued by U.S. Magistrate Judge Edwin G. Torres on November 4, 2008 ("Report," D.E. 641), which recommends that this Court grant in part and deny in part the Motion for Summary Judgment filed by Defendant Polyflow, Inc. ("Polyflow") on February 7, 2008 (<u>see</u> D.E. 437). On November 24, 2008, Polyflow filed its Objections to the Report ("Objections," D.E. 659). On December 12, 2008, Plaintiffs filed their Response to the Objections ("Response," D.E. 665). Having reviewed the Report, the Objections, and the Response, the Court finds as follows:

**I.     General Background**

As described in the Report, this case involves thermoplastic flexible piping ("FlexPipe") marketed and distributed by Defendant Total Containment, Inc. ("TCI") for use in underground fuel containment systems, to enable petroleum fuels to be pumped from underground storage tanks to above-ground fuel dispensers. (D.E. 641 at 2.) Plaintiffs purchased and installed, or otherwise used, FlexPipe at their fuel dispensing facilities and retail gasoline stations. (Id.)

As further noted in the Report, Defendant Polyflow was formed in March 2002, and, through a series of financial transactions occurring on or about July 2, 2002, Polyflow purchased TCI's pipe production assets. (Id.)

Plaintiffs allege, inter alia, that Polyflow and other Defendants designed, manufactured, marketed, distributed, and sold FlexPipe to Plaintiffs which Defendants knew or should have known was fundamentally unsuitable for its intended purpose of conveying and containing petroleum fuels from underground storage tanks to above-ground fuel dispensers. (Id. at 3.) Plaintiffs further allege that Defendants engaged in a fraudulent scheme to market and sell defective FlexPipe for profit, knowing that the product was defective and not approved for sale by federal and state regulatory agencies. (Id.) Finally, Plaintiffs allege that as a result of Defendants' conduct, they purchased FlexPipe that has deteriorated and/or is deteriorating, resulting in physical damage to the FlexPipe itself and other components of Plaintiffs' fuel containment, conveyance, and

delivery systems, and resulting in fuel leaks that contaminate the surrounding environment.  (Id.)  Based on these and additional allegations, Plaintiffs assert seven (7) claims against Polyflow, on which Polyflow now seeks summary judgment in its favor.  (See id.)

> II.  Analysis
>
> 1.  Direct Liability Claims

As the Report notes, Polyflow first moves for summary judgment on Plaintiffs' claims based upon a stipulation entered into by Polyflow and Plaintiffs, which provides, inter alia, that Polyflow was not incorporated until after Plaintiffs purchased and installed FlexPipe, and that, as a result, Polyflow "did not directly:  (i) make any fraudulent or false statements to [Plaintiffs] regarding the allegedly defective pipe; or (ii) design, test, manufacture, warrant, advertise, market, sell, or distribute any of the allegedly defective pipe to the named Plaintiffs."  (D.E. 641 at 4-5 (citing D.E. 437 at 6).)  Based on the facts in the record, including this stipulation, the Report concludes that Plaintiffs have conceded that they did not install or use Polyflow-manufactured FlexPipe; that Polyflow did not issue to Plaintiffs any express warranties from Polyflow guaranteeing the TCI piping systems; and that Polyflow did not sell any products to Plaintiffs.  (D.E. 641 at 5-10.)  After analyzing the applicable law, the Report further concludes that (i) Plaintiffs lack standing to raise direct liability claims against Defendant; (ii) Plaintiffs also lack standing to represent putative class members who may have a claim arising out of damage

3

from Polyflow pipe products; and (iii) Polyflow cannot be held liable to Plaintiffs on their breach of express warranty claims.  (See id.)  In addition, the Report recommends that the Court deny as untimely Plaintiffs' request to add to this action a class representative who directly suffered damage from Polyflow-manufactured piping, citing the April 4, 2007 deadline to amend the pleadings in this case.  (Id. at 8-9.)  Accordingly, the Report recommends that summary judgment be granted in Polyflow's favor to the extent that Plaintiffs' claims are based upon Polyflow's direct liability to Plaintiffs.

Neither party objects to the Report's factual or legal findings regarding Polyflow's alleged direct liability to Plaintiffs, and upon an independent review of the record, the Court finds that Plaintiffs may not recover against Polyflow based upon a theory of direct liability, nor may Plaintiffs recover against Polyflow on their breach of express warranty claim.  Accordingly, summary judgment is granted in favor of Polyflow on Plaintiffs' breach of express warranty claim, and, to the extent that Plaintiffs' claims are based upon a theory of Polyflow's direct liability to Plaintiffs, summary judgment is likewise granted in favor of Polyflow.

### 2. Successor-in-Interest to TCI

Polyflow next seeks summary judgment on Plaintiffs' claim that Polyflow is liable to Plaintiffs as the successor-in-interest to TCI. (See D.E. 437 at 8-13.)  As the Report notes, Polyflow asserts that the undisputed facts of this case show that Polyflow is not a mere continuation of TCI nor was its purchase of TCI's pipe production assets a

fraudulent effort to avoid liability of the predecessor; Plaintiffs, on the other hand, argue that evidence shows that Polyflow is substantially a continuation of TCI's business operations, and that the series of financial transactions that took place on or about July 2, 2002 were "sham transactions" to avoid successor liability exposure. (See D.E. 641 at 10-11 (citations omitted).)

With respect to this issue, the Report first notes that the "traditional corporate law rule" does not impose the liabilities of the selling predecessor (here, TCI) upon the buying successor company (here, Polyflow) unless, inter alia, the successor is a mere continuation of the predecessor, or the transaction is a fraudulent effort to avoid liabilities of the predecessor. (Id. at 10 (citations omitted).) After analyzing the parties' arguments, the Report concludes that the issues of whether Polyflow was a mere continuation of TCI and whether the asset transfer to Polyflow was a fraudulent effort to avoid TCI's liabilities are issues of fact that must be resolved by the fact-finder in this case. (Id. at 14.) In making this finding, the Report notes that there is evidence on the record which, if believed by the jury, could support Plaintiffs' claim that TCI and Polyflow were not truly independent corporate entities and that the sale of assets was designed to avoid predecessor liability; the Report then specifically enumerates the areas in which genuine issues of disputed material fact exist, and recommends that summary judgment be denied on the successor-in-interest issue. (Id. at 14-15.)

Polyflow objects to the Report's conclusion that summary judgment is not

warranted on this issue on the grounds that, according to Polyflow, the undisputed facts establish that Polyflow was created, and functioned as, a completely different entity in form and substance from TCI. (D.E. 659 at 3-4.) In support of its contention, Polyflow enumerates the undisputed facts which, in its view, foreclose any conclusion that Polyflow was the mere continuation of TCI; notably, however, Polyflow does not argue that the facts presented by the Magistrate Judge in the Report or presented by Plaintiffs in support of their position are inaccurate or disputed. (Id. at 4-7.)

After an independent review of the record and applicable law, and after reviewing the nature of Polyflow's disagreement with the Report's conclusions, the Court agrees with Plaintiffs that Polyflow "ignores the applicable standard on a motion for summary judgment" in its Objections. (See D.E. 665 at 3-4.) Although the Court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986), a review of the Objections reveals that Polyflow is essentially asking this Court to do just that - i.e., weigh the evidence set forth by Polyflow in its Objections and determine on summary judgment that Polyflow is not liable as TCI's successor-in-interest as a result of the weight of the evidence. Moreover, in its Objections, Polyflow also appears to ignore the fact that, on a motion for summary judgment, the Court is required to construe "the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party." See Adickes v. S.H. Kress

& Co., 398 U.S. 144, 157 (1970). Here, as the Magistrate Judge accurately noted, summary judgment on the issue of Polyflow's successor-in-interest liability is inappropriate because, although the record reveals material facts that may support Polyflow's position, the record also contains material facts which, if believed by the fact-finder in this case, could likewise support Plaintiffs' claim that TCI and Polyflow were not truly independent corporate entities and that the sale of TCI's pipe assets was designed to avoid predecessor liability. Accordingly, for the reasons stated in the Report and as further stated herein, summary judgment on the issue of whether Polyflow is liable to Plaintiffs as a successor-in-interest to TCI is denied.

### 3. Fraudulent Transaction and the Bankruptcy Proceeding

Finally, the Report addresses Polyflow's request that certain allegations regarding the manner in which Polyflow is allegedly liable to Plaintiffs in the Second Amended Complaint be stricken because the basis for such allegations is the property of the bankruptcy estate (and a bankruptcy proceeding remains pending). (See D.E. 641 at 15-16.) The Report recommends that the Court not strike such allegations, given that Plaintiffs have indicated on the record that they are not making a stand-alone claim for fraudulent conveyance or seeking avoidance of the underlying transaction, namely, the transfer of TCI's pipe-making operation to Polyflow. (See id.) Polyflow does not object to the Report's recommendation in this regard, and after an independent review of the record, the Court denies Polyflow's request that such allegations be stricken from the

7

Second Amended Complaint.

Based on the above, it is:

**ORDERED AND ADJUDGED that**

**1.** The Report and Recommendation issued by U.S. Magistrate Judge Edwin G. Torres on November 4, 2008 ("Report," D.E. 641), is **ADOPTED.**

**2.** The Motion for Summary Judgment filed by Defendant Polyflow, Inc. on February 7, 2008 (D.E. 437) is **GRANTED in part and DENIED in part** as described in this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of December, 2008.

_____
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**