UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-20953-CIV-LENARD/TORRES

**CITY OF ST. PETERSBURG**, a Florida municipality; **TWIN OIL COMPANY**, a Florida corporation; and **JEFF MONTGOMERY ASSOCIATES**, a sole proprietor in the State of Florida, on behalf of themselves and all other Florida residents similarly situated,

    Plaintiffs,
vs.

**DAYCO PRODUCTS, INC. AND DAYCO PRODUCTS, LLC,** *et al.*,

    Defendants.
_____/

## ORDER ADOPTING IN PART REPORT AND RECOMMENDATION (D.E. 629) ON THE MOTION FOR PARTIAL SUMMARY JUDGMENT FILED BY DEFENDANTS DAYCO PRODUCTS, INC. AND DAYCO PRODUCTS, LLC (D.E. 456)

**THIS CAUSE** is before the Court on the Report and Recommendation on Dayco Products, Inc.'s and Dayco Products, LLC's Motion for Partial Summary Judgment, issued by U.S. Magistrate Judge Edwin G. Torres on October 9, 2008 ("Report," D.E. 629). On October 27, 2008, Plaintiffs City of St. Petersburg ("St Petersburg"), Twin Oil Company ("Twin Oil"), and Jeff Montgomery Associates ("JMA") (collectively, "Plaintiffs") filed a Motion and Memorandum to Reconsider Report and Recommendation, and in the Alternative, an Objection to the Report and Recommendation on Dayco Products, Inc.'s and Dayco Products, LLC's Motion for

Partial Summary Judgment, which this Court construes as objections to the Report ("Objections," D.E. 638).[1]  On November 7, 2008, Defendants Dayco Products, Inc. and Dayco Products, LLC (collectively, the "Dayco Defendants") filed their response to Plaintiffs' Objections ("Response," D.E. 643).  Having reviewed the Report, the Objections, and the Response, the Court finds as follows:

**I.     General Background**

As described in the Report, this case involves thermoplastic flexible piping ("FlexPipe") marketed and distributed by Defendant Total Containment, Inc. ("TCI") for use in underground fuel containment systems, to enable petroleum fuels to be pumped from underground storage tanks to above-ground fuel dispensers.  (D.E. 629 at 2.) Plaintiffs purchased and installed, or otherwise used, FlexPipe at their fuel dispensing facilities and retail gasoline stations.  (Id.)

As further noted in the Report, from 1990 to 1997, TCI contracted with the Dayco Defendants to manufacture the primary pipe, which transfers fuel and which is fed into a secondary containment pipe.  (Id. at 3.)  The Dayco Defendants in turn contracted with Defendant Cleveland Tubing, Inc. ("Cleveland Tubing") to manufacture the inner layer of the primary pipe, which is always in direct contact with the fuel.  (Id.)  In 1997, TCI's agreement with the Dayco Defendants ended, and TCI then contracted directly with

---

[1] See 28 U.S.C. Section 636(b)(C); see also Rule 4(b) of the Magistrate Judge Rules of the Southern District of Florida.

Cleveland Tubing to manufacture both the primary and secondary pipes. (Id.) In 1999, TCI alone manufactured both the primary and secondary pipes. (Id.)

Plaintiffs allege, inter alia, that the Dayco Defendants negligently designed the FlexPipe primary pipe, and withheld from regulators, industry standard organizations, and the consuming public significant problems with the design and manufacturing techniques used to make the product. (Id. at 4.) Based on these and additional allegations, Plaintiffs assert four claims against the Dayco Defendants. (Id.)

On February 7, 2008, the Dayco Defendants filed a Motion for Partial Summary Judgment (see D.E. 456; see also D.E. 457, 458), seeking summary judgment on various issues, each of which are addressed in the Report, and each of which are dealt with below in light of the Report, the Objections, and the Response.

**II.   Analysis**

    **1.   Statute of Limitations**

The Dayco Defendants first argue that Plaintiffs' claims against them are barred by Florida's four-year statute of limitations. (See D.E. 458 at 2-4.) More specifically, as noted in the Report, the Dayco Defendants argue that all of Plaintiffs' claims must have accrued on or after April 12, 2002 to survive a statute of limitations challenge, but because Twin Oil and JMA had actual knowledge of the problems from which their claims arise before that date, their claims are time-barred. (D.E. 629 at 6.) In addition, the Dayco Defendants argue that St. Petersburg's claims are barred by Florida's twelve-

3

year statute of repose. (Id.) Plaintiffs, in turn, argue that all of their claims are tolled under <u>American Pipe and Constr. Co. v. Utah</u>, 414 U.S. 538 (1974) by the pendency of <u>May's Distribution Co., Inc. v. Total Containment, Inc.</u>, a putative nationwide class action filed in the Circuit Court for Bullock County, Alabama, on January 3, 2003, in which those plaintiffs allege the same claims as in this case. (Id.)

    i.  **Four-Year Statute of Limitations**

First, with respect to the four-year statute of limitations, the Report concludes, after an extensive analysis, that tolling under <u>American Pipe</u> applies in this case to Dayco Products, Inc.,[2] but not to Dayco Products, LLC, because Dayco Products, LLC was never named as a defendant in the class action filed in Alabama state court. (Id. at 6-11.) The Report concludes that <u>American Pipe</u> tolling does not apply to a defendant who was not named in the initial class action lawsuit where, as here, there is no allegation of a "parental" relationship or corporate control between the entity named in the initial lawsuit and the entity who was not named in the initial lawsuit; thus, all claims against Dayco Products, LLC in this case must have accrued on or after April 12, 2002, four years before the present lawsuit was filed in this Court. (Id. at 9-12.) Nonetheless, the Report reasons that because Dayco Products, Inc. was added as a defendant in the Alabama case upon the filing of an amended complaint on July 1, 2003, tolling commenced pursuant to

---

[2] Neither party objects to the Report's finding that <u>American Pipe</u> tolling applies to Dayco Products, Inc., and for the reasons described in the Report, the Court finds that Dayco Products, Inc. is not entitled to summary judgment on the ground that Plaintiffs' claims against it are time-barred by the applicable four-year statute of limitations.

4

American Pipe on that date with respect to claims against Dayco Products, Inc. (Id. at 11.)

In their Objections, Plaintiffs argue that the Report erroneously recommends that American Pipe tolling does not apply to Dayco Products, LLC, because it is the same entity as Dayco Products, Inc., which was named in the May's litigation, and because Dayco Products, LLC did not seek summary judgment on the grounds that it is an entity distinct from Dayco Products, Inc. (See D.E. 638 at 7-8.) Moreover, Plaintiffs accurately note that the Dayco Defendants actually refer to themselves as one entity in their own statement of facts filed in support of their motion for summary judgment, although, as also noted by Plaintiffs, the Dayco Defendants do mention that Dayco Products, LLC was not named in the May's action in a footnote contained within their memorandum of law. (See id. at 8; see also D.E. 457 ¶¶ 8-10; D.E. 458 at 3 n.1.)

Having reviewed the record before it, the Court finds that Dayco Products, LLC has not met their burden on summary judgment of establishing that American Pipe tolling does not apply to Dayco Products, LLC. As Plaintiffs note, the sole footnote referencing this issue merely states that Dayco Products, LLC was never named as a defendant in the Mays' action; this is an insufficient basis on which to find that American Pipe tolling does not apply to Dayco Products, LLC. See, e.g., Keener v. Convergys Corp., 342 F.3d 1264, 1270 (11th Cir. 2003) (concluding that a single reference in a footnote was insufficient to support summary judgment absent a proffer of a legal or factual basis in

5

pleadings, and that "it was incumbent upon" the defendant to demonstrate first the legal and factual bases supporting summary judgment). In any event, as noted above, the Dayco Defendants do refer to themselves as a single entity in their statement of facts, which, along with evidence provided by Plaintiffs, creates a genuine issue of material fact as to whether Dayco Products, Inc. and Dayco Products LLC are in fact the same entity for tolling purposes. (See, e.g., D.E. 638-2.) Accordingly, the Report is overruled as to this issue, and summary judgment on the grounds that American Pipe tolling does not apply to Plaintiffs' claims against Dayco Products, LLC is denied.

### ii. Florida's Statute of Repose and St. Petersburg's Claims

The Report concludes that the Dayco Defendants are not entitled to summary judgment on St. Peterburg's claims regarding its Fleet West facility on the basis of Section 95.031(2)(b) of the Florida Statutes, which "bars product liability actions if the harm was caused by exposure to or use of the product more than 12 years after delivery of the product to its first purchaser . . . . all products [with certain exceptions]. . . are conclusively presumed to have an expected useful life of 10 years or less." (D.E. 629 at 19-20 (citing Fla. Stat. § 95.031(2)(b).) As noted in the Report, the statute creates an exception for certain products "which the manufacturer specifically warranted, through express representation or labeling, as having an expected useful life exceeding 10 years," and provides that such products have "an expected useful life commensurate with the time period indicated by the warranty or label." (Id. (citing Fla. Stat. § 95.031(2)(b)(2).)

With respect to such products, the statute further provides that "no action for products liability may be brought after the expected useful life of the product, or more than 12 years after delivery of the product to its first purchases . . . whichever is later." (Id. (citing Fla. Stat. § 95.031(2)(b)(2).)

The Report concludes that because facts in evidence support Plaintiffs' claim that FlexPipe was supposed to last at least 20 years, a question of fact exists as to whether FlexPipe's expected useful life was warranted to be more than ten years, in which case the 12-year statute of repose would not apply. (Id. at 20.) Neither party objects to this finding, and upon an independent review of the record, the Court concludes that summary judgment on the basis that the statute of repose bars St. Petersburg's claims is denied.

### 2. Defects or Failures at St. Petersburg's and JMA's Stations

The Dayco Defendants next assert that all claims by St. Petersburg should be dismissed because there is no evidence of any defects, failures, or leaks of Dayco FlexPipe at its municipal fueling station; similarly, they assert that all claims by JMA should be dismissed because JMA admitted that Dayco FlexPipe installed at his station did not fail or leak. (See D.E. 458 at 5-10.) With regard to the negligence and strict products liability claims brought by St. Petersburg and JMA against the Dayco Defendants, the Report concludes that such claims are barred by summary judgment. (See D.E. 629 at 20-27.) As noted in the Report, Plaintiffs do not dispute that the Dayco Defendants did not manufacture any of the allegedly leaking hose at the subject locations

owned by either St. Petersburg or JMA.  (Id. at 21.)  The Report further notes that TCI altered the design and construction of the primary hose after its supply agreement with the Dayco Defendants ended.  (Id. at 24.)  After an extensive legal analysis, the Report concludes that Florida law requires a plaintiff in a products liability action to prove that the manufacturer defendant produced the product that allegedly caused the injury, and that, because St. Petersburg and JMA have failed to show that their claims are based on hose that the Dayco Defendants designed or manufactured, they cannot be held liable for St. Petersburg's and JMA's negligence and strict products liability claims; as such, the Report recommends that the Dayco Defendants are thus entitled to summary judgment on such claims.  (Id. at 21-26.)[3]

Plaintiffs do not object to the Report's legal analysis on this issue, and further concede that Dayco pipe was never installed at JMA's facilities, nor at St. Petersburg's East and West gasoline facilities.  (See D.E. 638 at 10-11.)  In any event, after its own independent review of the record, the Court adopts the Report's factual findings and legal conclusions as to Plaintiffs' negligence and strict liability claims regarding JMA's facilities and regarding St. Petersburg's East and West gasoline facilities, and grants

---

[3] In addition, the Report recommends that summary judgment be granted on Twin Oil's negligence and strict liability claims against the Dayco Defendants that relate to Twin Oil's NMB station, because Plaintiffs have clarified that Twin Oil is not making such claims for damage to Dayco-designed or manufactured hose at that station. (D.E. 629 at 26-27.) Plaintiffs do not object to this finding, and the Court hereby adopts such finding and concludes that summary judgment is granted in favor of the Dayco Defendants on any negligence or strict liability claim by Twin Oil relating to its NMB station.

summary judgment to the Dayco Defendants on these claims.

Plaintiffs do object, however, to the Report's finding that the Dayco Defendants are entitled to summary judgment as to St. Petersburg's negligence and strict liability claims regarding its West Side Diesel line. (See D.E. 638 at 10-11.) Plaintiffs argue that the Dayco Defendants are not entitled to summary judgment on this particular issue because evidence in the record shows that Dacyo-manufactured pipe was previously installed at the West Side Diesel site in 1993. (Id. at 10.) Nonetheless, Plaintiffs concede that such pipe was replaced after installation, and that when the allegedly defective pipe was removed from St. Peterburg's diesel line, it was not Dayco-manufactured pipe. (Id. at 11.) Moreover, as the Dayco Defendants note in their motion for summary judgment, Plaintiffs have failed to adduce any evidence that the primary hose in the TCI system at St. Petersburg's West Side Diesel site ever leaked or was defective. Because, as noted by the Report, Florida law requires Plaintiffs to prove that the Dayco Defendants produced the product that allegedly caused the injury, and because Plaintiffs have not pointed to any evidence in the record indicating that St. Petersburg may have suffered injury as a result of Dayco pipe installed at the West Side Diesel site, rather than as a result of the pipe that was actually removed from the facility (and which Plaintiffs concede was not Dayco-manufactured pipe), the Court concludes that the Dayco Defendants are entitled to summary judgment on Plaintiffs' negligence and strict products liability claims as to St. Petersburg's West Side Diesel facility as well.

### 3. Omniflex, Monoflex, and PP1502 Hose Products Claims

The Dayco Defendants seek summary judgment on Plaintiffs' claims regarding the Dayco Defendants' Omniflex, Monoflex, and PP1502 hose products for lack of standing. (See D.E. 458 at 10-11.) Plaintiffs argue against summary judgment on the ground that FlexPipe, which was installed or used by Plaintiffs in their respective stations, suffered from the same "uniform defect" as the Omniflex, Monoflex, and PP1502 products, and, thus, according to Plaintiffs, they should be able to proceed on claims stemming from the Omniflex, Monoflex, and PP1502 products as well. (See D.E. 505 at 8-9.)

After an analysis of the applicable law on standing, the Report concludes that Plaintiffs lack standing to assert claims relating to the Omniflex, Monoflex, and PP1502 products because it is undisputed that Plaintiffs did not have these products at their stations; as a result, the Report also concludes that Plaintiffs lack standing to represent putative class members with potential claims as to these particular models of hoses. (D.E. 629 at 26-29.) The Report therefore recommends that summary judgment be granted in favor of the Dayco Defendants as to all of Plaintiffs' claims regarding the Omniflex, Monoflex, and PP1502 products. (Id. at 29.)

Plaintiffs do not object to the Report's conclusion that JMA lacks standing regarding the Omniflex, Monoflex, and PP1502 products, but they do object to the Report's findings on the issue of standing with regard to Twin Oil and St. Petersburg. More specifically, Plaintiffs argue that the Magistrate Judge "conflates Article III

standing with the procedural requirements of [Federal Rule of Civil Procedure 23(a)]" with respect to Twin Oil and St. Petersburg.  (D.E. 638 at 7.)  The Court has independently reviewed Plaintiffs' argument in conjunction with the applicable law and the Report, and, contrary to Plaintiffs' argument, does not find that the Magistrate Judge has "conflate[d]" Article III standing with the requirements for certifying a class action under Federal Rule of Civil Procedure 23(a).  Moreover, for the reasons stated by the Magistrate Judge in the Report, the undersigned is not persuaded by Plaintiffs' legally unsupported "uniform defect" theory.  (See D.E. 505 at 8; see also D.E. 629 at 27-28.)  Plaintiffs do not dispute that Dayco-manufactured Omniflex, Monoflex, or PP1502 hose was never installed or used in their respective stations, and Plaintiffs further concede that the only Dayco-manufactured product used or installed by Plaintiffs was FlexPipe.  For all of these reasons and as further described by the Magistrate Judge in the Report, the Court finds that Plaintiffs lack standing to assert claims against the Dayco Defendants regarding the Omniflex, Monoflex, and PP1502 products, and similarly lack standing to assert such claims on behalf of a class.  Accordingly, the Court concludes that the Dayco Defendants are entitled to summary judgment on Plaintiffs' claims regarding the Omniflex, Monoflex, and PP1502 products.

    **4.**    **Economic Loss Rule**

The Dayco Defendants next argue that Plaintiffs are barred under Florida's economic loss doctrine from bringing tort claims for economic damages against

Defendants for alleged damage to TCI's systems or their component parts.  (See D.E. 458 at 11-13).  The Report recommends that summary judgment should be granted in part and denied in part with respect to these claims.  (See D.E. 629 at 29-36.)  Neither Plaintiffs nor the Dayco Defendants object to these findings, and the Court finds, after an independent review of the record, that the record and the relevant law supports the Report's recommendations. Accordingly, the Court adopts the findings of the Magistrate Judge as described in the Report with respect to the economic loss doctrine.

### 5. Twin Oil's Standing:  Miramar and Hialeah Stations

The Dayco Defendants also seek summary judgment on any claims by Twin Oil as to the Miramar and Hialeah stations for lack of standing, because, according to the Dayco Defendants, Twin Oil does not own these properties.  After a detailed analysis, the Report concludes that Twin Oil meets the "real party in interest" test as to the Miramar and Hialeah sites, and thus recommends that summary judgment be denied as to the Dayco Defendants' argument that Plaintiff Twin Oil lacks standing to assert any claims for the Miramar and Hialeah stations because it does not own these properties.  (See Report at 36-40.)  Neither Plaintiffs nor the Dayco Defendants object to these findings, and the Court finds, after an independent review of the record, that the record and the relevant law supports the Report's recommendations on this issue.  Accordingly, for the reasons described in the Report, the Court adopts the findings of the Magistrate Judge that Twin Oil has standing as to claims regarding the Miramar and Hialeah stations, and denies

summary judgment on Twin Oil's claims against the Dayco Defendants relating to the Miramar and Hialeah stations.

### 6. Negligent Misrepresentation, Concealment, and Unjust Enrichment Claims

Next, the Dayco Defendants argue that because Plaintiffs cannot prove one or more elements of their claim for negligent misrepresentation, concealment, or unjust enrichment, these claims should be dismissed on summary judgment. (See D.E. 458 at 15-16.) More specifically, the Dayco Defendants argue that there is no evidence of any oral or written communication between Plaintiffs and the Dayco Defendants in this case, and further argue that the Dayco Defendants had no contact with TCI customers and did not know who purchased the TCI system. (Id. at 16.) As such, the Dayco Defendants assert that they did not make a representation or misrepresentation to Plaintiffs, did not conceal anything from Plaintiffs, and could not have induced Plaintiffs to rely on a representation or misrepresentation absent contact with Plaintiffs. (Id.)

Plaintiffs first argue that privity is not required for their negligent misrepresentation/concealment or unjust enrichment claims. (D.E. 505 at 15-16.) Instead, Plaintiffs argue that Section 552 of the Restatement (Second) of Torts ("Section 552"), which provides that a party who negligently supplies false information in the course of its business or any other transaction in which it has a pecuniary interest is liable to a party harmed by that false information, applies in this case, and precludes summary judgment. (Id.) In addition, Plaintiffs argue that they need not establish that the Dayco

13

Defendants had a duty to disclose its involvement in manufacturing FlexPipe to prove their negligent misrepresentation claim, and that they have otherwise satisfied all the elements of their negligent misrepresentation/concealment and unjust enrichment claims. (Id.)

After an extensive legal analysis, the Report concludes that summary judgment against Plaintiffs is warranted on their negligent misrepresentation/concealment claim. (D.E. 629 at 40-45.)  In reaching this conclusion, the Report first describes the elements of a negligent misrepresentation and inducement claim. (See id. at 40 (noting that a plaintiff must prove (1) a misrepresentation of a material fact; (2) that the representor made the representation without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity; (3) that the representor intended that the misrepresentation induce another to act on it; and (4) that the injury resulted to the party acting in justifiable reliance on the misrepresentation; and further noting that the elements for an inducement claim are similar (citations omitted).)  Next, after an extensive legal analysis, the Report concludes that Section 552 is not applicable in this case.  (Id. at 41-45.)  The Report then concludes that Plaintiffs have failed to establish that they justifiably relied on any representations by the Dayco Defendants or that the Dayco Defendants concealed material facts on which Plaintiffs relied to their detriment.  (Id. at 45.)  In reaching this conclusion, the Magistrate Judge notes the undisputed fact that Plaintiffs had no dealings with the Dayco Defendants or even knew

14

of their existence prior to this litigation. (Id. at 45.) The Magistrate Judge also concludes that Plaintiffs have not presented evidence that the Dayco Defendants knew or had reason to believe that any alleged misrepresentations made by TCI would in turn be transmitted to Plaintiffs or similar persons, and that such information would be relied on by Plaintiffs or others in business-making decisions. (Id.) For these reasons, the Magistrate Judge recommends summary judgment for the Dayco Defendants on Plaintiffs' negligent misrepresentation/concealment claim. (Id.)

Plaintiffs object to the Report's conclusions regarding Plaintiffs' negligent misrepresentation claim on several grounds. First, Plaintiffs assert that the Report "ignores that [the Dayco Defendants'] liability to the named Plaintiffs is based on [their] failure to disclose material facts." (D.E. 638 at 14.) Second, Plaintiffs reiterate their argument that Section 552 is applicable in this case. (Id. at 16.) Third, Plaintiffs contend that the Magistrate Judge "wrongly suggested that [Plaintiffs'] negligent misrepresentation claim fails because [Plaintiffs] did not have 'dealings' with [the Dayco Defendants]." (Id.) Lastly, Plaintiffs argue that the Magistrate Judge erred in concluding that Plaintiffs could not have justifiably relied on the Dayco Defendants' material omissions as Plaintiffs had not known of their existence prior to this litigation; according to Plaintiffs, "[i]t is axiomatic that if [the Dayco Defendants] had informed TCI customers about the defective nature of FlexPipe, the named Plaintiffs would have previously heard of [the Dayco Defendants]." (Id.)

15

The Court has independently reviewed the law and the facts of this case in light of Plaintiffs' objections, and finds that, despite Plaintiffs' arguments to the contrary, the lack of privity between the Dayco Defendants and Plaintiffs in this particular case precludes Plaintiffs' negligent misrepresentation/concealment claim.  As described in the Report's extensive legal analysis on Section 552, and based on this Court's own review of the cases cited therein, the Court does not find that Section 552 is applicable in this case.  Further, Plaintiffs have failed to present any evidence of prior dealings with the Dayco Defendants, including evidence of any oral or written communication between Plaintiffs and the Dayco Defendants.  Plaintiffs have also failed to point to any evidence that the Dayco Defendants had any contact with TCI customers or that the Dayco Defendants knew who purchased the TCI system.  Under these circumstances, Plaintiffs cannot establish that the Dayco Defendants intended that any alleged misrepresentation induced Plaintiffs to act, or that Plaintiffs justifiably relied on any alleged misrepresentation made by the Dayco Defendants.  Moreover, Plaintiffs have not otherwise raised a genuine issue of material fact which would preclude summary judgment on their negligent misrepresentation/concealment claim.  As such, the Dayco Defendants are entitled to summary judgment on Plaintiffs' negligent misrepresentation/concealment claim.

The Report also recommends dismissal of Plaintiffs' unjust enrichment claim on summary judgment, which Plaintiffs object to on several grounds. (See D.E. 629 at 46; see also D.E. 638 at 17-22.)  The Court has independently reviewed the record and the

law in light of Plaintiffs' objections and, find that, as with Plaintiffs' negligent misrepresentation/concealment claim, Plaintiffs' contention that the Dayco Defendants may be held liable under a theory of unjust enrichment is untenable where, as here, it is undisputed that Plaintiffs had no dealing with the Dayco Defendants or even knew of their existence until after this litigation ensued; Plaintiffs have failed to present any evidence of prior dealings with the Dayco Defendants, including evidence of any oral or written communication between Plaintiffs and the Dayco Defendants; and Plaintiffs have also failed to point to any evidence that the Dayco Defendants had any contact with TCI customers or that the Dayco Defendants knew who purchased the TCI system. Under these undisputed circumstances, Plaintiffs cannot establish the Dayco Defendants knowingly and voluntarily accepted any benefits conferred upon them by Plaintiffs as required to state a claim for unjust enrichment under Florida law. Plaintiffs' unjust enrichment claim is therefore dismissed, and summary judgment is granted in the Dayco Defendants' favor on this claim.

### 7. Punitive Damages

The Dayco Defendants next argue that "[a]ll punitive damage claims by Plaintiffs against the Dayco Defendants should be dismissed for lack of clear and convincing evidence of intentional conduct or gross negligence." (See D.E. 456 at 4.) The Report concludes that, because there are disputed issues of material fact on the record with regard to whether the Dayco Defendants' conduct qualifies as intentional misconduct,

17

summary judgment in favor of the Dayco Defendants on this ground is inappropriate. (See Report at 47-51.) Neither Plaintiffs nor the Dayco Defendants object to these findings, and the Court finds, after an independent review of the record, that the record and the relevant law supports the Report's recommendations on this issue. Accordingly, for the reasons described in the Report, the Court adopts the findings of the Magistrate Judge that summary judgment be denied as to Plaintiffs' claims for punitive damages.

### 8. Attorney's Fees

Finally, the Dayco Defendants seek summary judgment on all claims for attorney's fees by Plaintiffs because, according to the Dayco Defendants, such damages are not recoverable under Florida law. (See D.E. 456 at 4.) The Report concludes that summary judgment on this ground would be premature, as "all issues relative to attorneys' fees will be resolved after trial." (Report at 51.) Again, neither Plaintiffs nor the Dayco Defendants object to these findings, and, after an independent review of the record, the Court finds that summary judgment precluding Plaintiffs from seeking attorney's fees would be inappropriate at this stage in the case. Accordingly, the Court adopts the Report's conclusion on the issue of attorney's fees and denies the Dayco Defendants' motion for summary judgment on that ground.

## III. Conclusion

For the reasons described above, it is

**ORDERED AND ADJUDGED that**

1.  The Report and Recommendation on Dayco Products, Inc. and Dayco Products, LLC's Motion for Partial Summary Judgment, issued by U.S. Magistrate Judge Edwin G. Torres on October 9, 2008 (D.E. 629), is adopted in part and overruled in part as stated in this Order.

2.  The Motion for Partial Summary Judgment filed by Defendants Dayco Products, Inc. and Dayco Products, LLC on February 27, 2008 (D.E. 456; see also D.E. 457, 458) is **GRANTED in part and DENIED in part** as described in this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of December, 2008.

                                          **JOAN A. LENARD**
                                          **UNITED STATES DISTRICT JUDGE**