UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-20953-CIV-LENARD/TORRES

CITY OF ST. PETERSBURG,
a Florida municipality, *et al.,*

       Plaintiffs,

vs.

TOTAL CONTAINMENT, INC.,
a Pennsylvania corporation, *et al.*,

       Defendants.
_____/

**REPORT AND RECOMMENDATION ON COMMERCE &
INDUSTRY INSURANCE COMPANY OF CANADA'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

      This matter is before the Court upon a Motion for Partial Summary Judgment Against Plaintiffs and Cross-Defendants as to Scope of Coverage filed by Intervenor-Plaintiff Commerce & Industry Insurance Company of Canada ("C&I") [**D.E. 379**] and related filings.[1]  Based on a thorough review of the motion, response, and reply, and the materials submitted in support of and opposition to summary judgment, we find it is undisputed that none of the representative Plaintiffs made a timely claim against TCI that could have triggered coverage under the C&I insurance policy at issue here. Accordingly, we recommend that C&I's motion for partial summary judgment against

---

      [1]      The Honorable Joan A. Lenard referred this case to the undersigned Magistrate Judge for report and recommendation on all dispositive motions.  [D.E. 462].

Plaintiffs and Cross-Defendants be GRANTED and that final judgment for this Defendant be entered. This renders C&I's Motion for Separate Trial [**D.E. 581**] moot.

## I.   BACKGROUND

This case involves thermoplastic flexible piping ("FlexPipe") marketed and distributed by Defendant Total Containment, Inc. ("TCI") for use in underground fuel containment systems to enable petroleum fuels to be pumped from underground storage tanks to above-ground fuel dispensers such as those used to fill vehicles' fuel tanks. Plaintiffs are the City of St. Petersburg, Florida ("City"), Twin Oil Company ("Twin Oil"), and Jeff Montgomery Associates ("JMA") (collectively, "Plaintiffs")[2], each of which purchased and installed or otherwise used FlexPipe at its fuel dispensing facilities and retail gasoline stations, respectively. Plaintiffs assert the following claims against these Defendants: (1) negligence (Count I); (2) strict products liability (Count II); (3) intentional fraudulent concealment (Count III); (4) fraud in the inducement (Count IV); (5) negligent misrepresentation/ concealment (Count V); and (6) unjust enrichment (Count VII).

---

[2]   Plaintiffs sought to certify a class of "all persons and entities in the State of Florida (a) who presently own an underground piping system equipped with TCI thermoplastic flexible piping . . . or (b) who formerly owned an underground piping system equipped with TCI thermoplastic flexible piping located in the State of Florida, and incurred any expenses associated with (1) repair or replacement of all or part of their underground piping system, and/or (2) a fuel leak from the underground piping system." [D.E. 211 ("Plaintiffs' Second Amended Class Action Complaint for Declaratory and Injunctive Relief and for Damages"), ¶ 1]. On November 30, 2008, we issued a Report and Recommendation ("R&R") recommending that Plaintiffs' motion for class certification be denied. [D.E. 663]. Objections were filed and the issue is pending before Judge Lenard.

C&I issued an insurance policy to TCI that provided commercial general liability insurance for the period beginning June 30, 1999 to June 30, 2000. [D.E. 381, Dec. 10, 2007 Affidavit of Mario Pigeon ("Pigeon Aff."), Ex. B (C&I insurance policy No. 546-85-09)]. TCI filed for bankruptcy on March 4, 2004. By Order dated March 14, 2006, the Bankruptcy Court granted Twin Oil's motion for relief from the automatic stay imposed under the Bankruptcy Code. [*Id.*, Ex. A (Order, Bankruptcy No. 04-13144F (Bankr. E.D. Pa. March 14, 2006))]. The Order provided in relevant part:

> The bankruptcy stay is modified so that the movants may exercise their non-bankruptcy law rights to prosecute all prepetition claims they may hold or assert against the debtor [TCI]. However, the movants may not execute upon estate property or seek payment from estate property. To the extent a non-bankruptcy forum determines that the movants hold valid claims against the debtor, they may recover or obtain payment on those claims, to the extent permitted by relevant non-bankruptcy law, only from the proceeds of the following insurance policies[.]

[*Id.* at 1-2]. The Order then listed six insurance policies, including C&I policy No. 546-85-0. [*Id.* at 2]. C&I moves for partial summary judgment as to the scope of coverage under this policy.

## II.   ANALYSIS

### A.   *Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Imaging Bus. Mach., LLC. v. BancTec, Inc.*, 459 F.3d 1186, 1189 (11th Cir. 2006) (citing Fed. R. Civ. P. 56(c)).  In deciding a summary judgment motion, the court must view all the evidence and make all

reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citing *Cruz v. Public Super Mkts., Inc.*, 428 F.3d 1379, 1382 (11th Cir. 2005)). A material fact is one that might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hilburn v. Murata Elecs. North Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). Thus, the task is to determine whether, considering the evidence in the light most favorable to the plaintiff, there is evidence on which the trier of fact could reasonably find a verdict in their favor. *See Anderson,* 477 U.S. at 251; *Hilburn*, 181 F.3d at 1225.

### B. *C&I's Claims-Made Policy*

In moving for partial summary judgment as to the scope of coverage under its policy, C&I seeks a ruling that (1) the existence of an alleged product defect does not constitute an "occurrence" implicating coverage; (2) there is no coverage for damages due to any "property damage" that takes place before the Retroactive Date and after the end of the policy period; (3) there is no coverage unless a plaintiff or class member first made a claim against an insured under the policy period; and (4) there is no coverage for direct or consequential costs to repair or replace the product at issue in this litigation. [D.E. 379 at 1-2]. We find the third point is dispositive of the coverage issue. Because there is no record evidence that any of the representative Plaintiffs made a claim against TCI during the policy period, coverage is not triggered as to these particular Plaintiffs. And, as we have recommended that Plaintiffs' motion for class

certification be denied, there will be no class members who might have made timely claims that could trigger coverage under the C&I policy.

The C&I policy at issue here applies to property damage only if "[a] claim for damages because of the . . . 'property damage' is first made against any insured . . . during the policy period. . . ." [D.E. 381, Pigeon Aff., Ex. B, § I.A.1.b.(3)]. Both C&I and the Plaintiffs agree that this policy is a "claims-made" policy. [D.E. 379 (C&I's Mot. Partial Summ. J.) at 14 ("Absent a claim during the policy period, there is no coverage under a claims-made policy like the C&I policy."); D.E. 510 (Plaintiffs' Opp'n to C&I's Mot. Partial Summ. J.) at 8 ("It is thus undisputed that the C&I Policy is a claims-made, not an occurrence-based, policy.")]. A claims-made policy provides insurance coverage for damage if the policyholder discovers the injury and advises the insurer during the effective policy term. *Gulf Ins. Co. v. Dolan*, 433 So. 2d 512, 514 (Fla. 1983). "The essence, then, of a claims-made policy is notice to the carrier within the policy period." *Id.*; *see also Eagle Am. Ins. Co. v. Nichols*, 814 So. 2d 1083, 1085 (Fla. 4th DCA 2002) (a claims-made policy covers claims made against the insured during the policy period). A claims-made policy is distinct from an "occurrence" policy under which coverage is effective only "if the negligent act or omission occurs during the policy period, regardless of the date of discovery or the date the claim is made or asserted." *Dolan*, 433 So.2d at 514.

It is undisputed that the pertinent policy period is June 30, 1999 through June 30, 2000. [D.E. 379 at 14; D.E. 510 at 8]. Thus, C&I is obligated to respond to claims

made between June 30, 1999 and June 30, 2000. Absent a claim during this period, there is no coverage under C&I's claims-made policy

> Coverage [under a claims-made policy] depends on the claim being made and reported to the insurer during the policy period. Claims-made or discovery policies are essentially reporting policies. If the claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay; *if the claim is not reported during the policy period, no liability attaches.*

*Dolan*, 433 So. 2d at 515 (*emphasis supplied*); *see also Guarantee Ins. Co. v. Gulf Ins. Co.*, 628 F. Supp 867, 870 (S.D. Fla. 1986) (holding that a claims-made policy did not apply because no claims were made against the insured during the policy period).

C&I asserts that none of the representative Plaintiffs first made a claim during the relevant policy period. The City admitted that it did not make any claim to TCI during the period June 30, 1999 to June 30, 2000. [D.E. 381, Pigeon Aff., Ex. C, City's Responses to C&I's First Requests for Admission, Request Nos. 1-4]. Twin Oil admitted that it first made a claim to TCI prior to June 30, 1999, concerning the September 1998 leak event at its North Miami Beach site, however, there is no evidence of any other claims it first made during the policy period. [*Id.*, Ex. D, Twin Oil's Responses to C&I's First Requests for Admission, Request Nos. 1-2].[3] JMA admitted that it first made a claim to TCI prior to June 30, 1999, concerning several alleged problems at its station that were fixed during the policy period, but there is no

---

[3] We note that Plaintiffs do not allege that the 1998 leak at Twin Oil's North Miami Beach location resulted from the defect at issue in this case, nor do they seek compensation for that leak. [D.E. 503 (Plaintiffs' Opp'n to Cleveland Tubing, Inc.'s Mot. Partial Summ. J.) at 10; D.E. 625 (October 9, 2008 R&R on Cleveland Tubing, Inc's. Mot. Partial Summ. J.) at 20].

evidence of any other claims it first made during the policy period. [*Id.*, Ex. E, JMA's Responses to C&I's First Requests for Admission, Request Nos. 1-4].[4]

Based on the foregoing admissions, which Plaintiffs do not dispute or deny, C&I argues that none of the representative Plaintiffs would be entitled to recover from C&I if they obtain a judgment against TCI. We agree. Because none of the representative Plaintiffs made a timely claim as required by C&I's claims-made policy, i.e., they made no claim against TCI between June 30, 1999 and June 30, 2000, there is no coverage for any of these Plaintiffs under that policy. Furthermore, we previously recommended that Plaintiffs' motion to certify a class in this case be denied. [D.E. 663]. Accordingly, there are no potential class members who may have made timely claims and thus could be entitled to recover against C&I.[5] Consequently, we recommend that C&I's motion for partial summary judgment be granted in its entirety and that judgment for C&I be entered.

### III.  CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge recommends that:

1) The Motion for Partial Summary Judgment Against Plaintiffs and Cross-Defendants as to Scope of Coverage filed by Defendant Commerce & Industry

---

[4] We note that Plaintiffs allege JMA first became aware of the defect at issue in this case in July 2002, which is when Omniflex pipe installed at the Hunter's Crossing station in 1999 failed. [D.E. 503 at 12; D.E. 625 at 22-23].

[5] If Judge Lenard declines to adopt our recommendation on class certification, C&I is not precluded from renewing this motion for partial summary judgment as to class members' claims, nor are Plaintiffs precluded from requesting that we vacate this Order as to the class members.

Insurance Company of Canada [**D.E. 379**] be **GRANTED** and that final judgment for Commerce & Industry Insurance Company of Canada be entered.

2)   The Motion for Separate Trial filed by Defendant Commerce & Industry Insurance Company of Canada [**D.E. 581**] be **DENIED** as moot.

Pursuant to Local Magistrate Rule 4(b), the parties have ten days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Joan A. Lenard, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein.  *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida this 3rd day of March, 2009.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge